RENDERED: APRIL 7, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0542-WC

TRIPLE D COMMUNICATIONS                                                    APPELLANT


                              PETITION FOR REVIEW OF A DECISION
v.                    OF THE WORKERS' COMPENSATION BOARD
                                 ACTION NO. WC-20-99284


ANTHONY SHRUM; HONORABLE
AMANDA MICHELLE PERKINS,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                                      APPELLEES


                                    OPINION
                                   AFFIRMING

                              ** ** ** ** **

BEFORE: ACREE, KAREM, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Triple D Communications (Triple D) petitions this Court to

review an April 20, 2022, Opinion of the Workers' Compensation Board (Board)

Vacating and Remanding an Opinion and Order of an Administrative Law Judge

(ALJ) that dismissed Anthony Shrum's claim for benefits. We affirm.

Shrum was employed by Triple D on July 29, 2019, when Shrum claims to have suffered a work-related injury. In his claim for workers' compensation benefits, Shrum alleged that he was struck in the face and head by a telephone pole. According to Shrum, he and two other employees of Triple D were in the process of moving a pole when the pole accidently struck him in the face and head. Shrum alleged to have suffered traumatic facial and head injuries.

Triple D denied that Shrum suffered a work-related facial or head injury. As support, Triple D pointed to inconsistent statements given by Shrum concerning the cause and the facts giving rise to his facial and head injuries. In particular, Triple D cited to Shrum's statements to various medical personnel, in the hours after the injury, that he had been riding a horse and hit a telephone pole.

By a November 22, 2021, Opinion and Order, the ALJ determined that Shrum failed to demonstrate that he suffered a work-related injury on July 29, 2019. The ALJ reasoned:

> The parties agree that Shrum suffered an injury on July 29, 2019. The parties disagree as to whether Shrum's injury occurred at work. After reviewing the conflicting evidence, the ALJ finds that Shrum has not met his burden of proving his injury occurred at work. The ALJ finds the separate histories given at Lake Cumberland and UK [hospitals] are more reliable and persuasive, and relies on those records in conjunction with Shrum's inconsistent testimony to find that he did not meet his burden of proof.
>
> . . . .

At his deposition, Shrum testified he thought he told Lake Cumberland he fell off a horse because he remembered seeing a black cow right before the telephone pole hit him. Yet, Shrum denied ever telling Lake Cumberland he fell off a horse during the final hearing. Furthermore, Shrum did not provide an explanation for why he told UK he fell off a horse.

Shrum pointed to the time sheet and witness statements as support that he suffered a work injury. However, the ALJ finds the witness statements and time sheets are unreliable. First, the witnesses described the extent of Shrum's injury very differently from how Shrum described it. Both witnesses stated that Shrum appeared dazed, but denied medical treatment. Yet, Shrum indicated he lost consciousness and woke up to Johnson performing CPR on him because he did not have a pulse. Shrum testified that there was blood all over the road and that Johnson transported him to Lake Cumberland and Regional Hospital. However, neither witness reported performing first aid on Shrum or taking him for medical treatment. Furthermore, the time sheet indicated that Johnson, Shrum, and Rowe worked until 4:30 p.m., yet Shrum's intake sheet at Lake Cumberland noted an arrival time of 4:21 p.m. If Johnson drove Shrum to the hospital, as he alleged, they could not have been working until 4:30 p.m.

Shrum also gave inconsistent testimony regarding the circumstances of the injury. Shrum testified that he was directing traffic and while he was attempting to slow down a female driver, the telephone pole hit him. At one point he testified that the woman did not stop to check on him and at another point he testified that she stopped to check on him because she thought he was dead. Shrum stated that Johnson took him straight to the hospital, but also gave a history of waiting for an ambulance on the scene of the injury. In his witness statement, he said he went home after work and then decided to go to the

> hospital because he was still dazed and in pain. At this deposition and hearing, he testified that he went straight to the hospital and never returned home.
>
> Shrum stated that after he regained consciousness he jumped to his feet and Johnson told him his jaw was split in half and that he (Johnson) had performed CPR on him because he didn't have a pulse. Shrum wanted to see the extent of his injuries, "so I got my phone out and I pulled it – the camera open, because on my lock screen I got a phone and a camera option. So I flipped it over so I can see it and I seen how it was split, so I went ahead and just took two pictures real quick." (Depo. 27:17-21). However, the photos he submitted are in contradiction to his testimony. The first time-stamped photo shows him sitting in the truck at 1:36 p.m. The next photo shows a picture of the alleged blood on the pavement at 1:44 p.m. Shrum testified that he was the person that took the photos, so he would have been in the truck to take a picture of himself and then exited the truck to take a picture of the pavement.

November 22, 2021, Opinion and Order at 5-7. Thus, the ALJ dismissed Shrum's claim. Being dissatisfied with the ALJ's Opinion and Order, Shrum sought review with the Board.

In an April 20, 2022, Opinion, the Board vacated and remanded the ALJ's Opinion and Order, instructing the ALJ to make additional findings on the work-related injury issue, based on the entirety of the evidence. The Board concluded there was overwhelming evidence that Shrum was injured at work and the ALJ failed to summarize and address relevant evidence regarding this issue. Triple D now seeks review by this Court.

To begin, this Court's review is limited to whether "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). Our review proceeds accordingly.

Triple D contends that the Board exceeded its authority and improperly vacated the ALJ's determination that Shrum failed to demonstrate that he suffered a work-related injury. Triple D asserts that the Board usurped the ALJ's role as fact-finder. Triple D believes the Board impermissibly weighed the evidence and cited to unreliable evidence in reaching its decision.

In workers' compensation proceedings, it is well-established that the ALJ is the fact-finder and possesses the discretion to judge the credibility of and/or to weigh the evidence. *Miller v. E. Ky. Beverage/Pepsico, Inc.*, 951 S.W.2d 329, 331 (Ky. 1997). However, it is equally accepted that an ALJ's decision may be vacated or reversed where the evidence compels a different result. *Fuertes v. Ford Motor Co.*, 481 S.W.3d 808, 810 (Ky. 2016).

In its April 20, 2022, Opinion, the Board undertook an extensive and detailed review of the evidence and determined that the evidence compelled a finding that Shrum did suffer a work-related face and head injury. We, too, have reviewed the evidence, the ALJ's Opinion and Order, and the Board's Opinion.

And, we are compelled to agree with the Board and cite to its meticulous summary

of the evidence:

> Because the statements of all witnesses to the events of July 29, 2019, and Triple D's work records unanimously establish Shrum was hit on the head by a swinging telephone pole on the date in question, we vacate the November 22, 2021, decision and the subsequent order.
>
> We note the following facts:
>
> · Shrum, Rowe, and Johnson stated Shrum was struck by a swinging telephone pole.
>
> · Triple D's Employee Injury Form states Shrum was hit in the jaw by a swinging telephone pole knocking him down.
>
> · Triple D's wage records firmly demonstrate all three employees were at work on the date in question.
>
> · Ross'[s] statement and his hearing testimony confirms the employees' account of the telephone pole hitting Shrum in the head. This was also confirmed by Triple D's "First Report of Injury" prepared by it on July 30, 2019.
>
> There was no other apparent reason for Triple D to insist Shrum present himself at Fast Pace on July 30, 2019, other than he was hit in the head by a swinging telephone pole and required medical treatment. On July 30, 2019, Shrum, after being released earlier that morning, was required by Triple D to drive from Russell Springs to Campbellsville where he was seen, according to Fast Pace records, for injuries sustained when he was struck in the "right side of the face around 1300 on 7/29/19." Regardless of the inconsistent and incoherent

histories Shrum provided to LCRH and UKMC [hospitals] and his testimony regarding what occurred after he was hit in the head by a swinging telephone pole, there is no question, pursuant to multiple records of Triple D, that Shrum was struck in the head by a telephone pole weighing two tons. Moreover, there was no coincidence Shrum was treated for severe facial injuries at LCRH two to three hours after being hit in the face necessitating his transfer to UKMC for extensive medical treatment. Thus, the evidence compels a finding Shrum was hit in the face by a swinging telephone pole on July 29, 2019.

The following facts are uncontradicted:

· Shrum went to work with Johnson and arrived in Campbellsville at 7:00 a.m.

· Shrum, Johnson, and Rowe travelled to Loretto next to Makers Mark Distillery.

· All witnesses to the event recounted that on the afternoon of July 29, 2019, Shrum was hit with a swinging telephone pole in the head.

· Triple D's Employee Injury Report reveals the incident occurred at 2:47 on July 29, 2019. A telephone pole broke loose striking Shrum's jaw knocking him to the ground.

· The timesheets of Triple D establish Shrum worked from 7:00 a.m. to 4:30 p.m. All times are Eastern Standard Time.

· Shrum gave various histories related to being thrown off a horse on July 29, 2019.

· The doctors at LCRH and UKMC [hospitals] diagnosed a mandibular fracture.

· Shrum was transferred to UKMC early in the morning of July 30, 2019, where he continued to repeat the history of falling off a horse. There the impression was acute displaced fracture of the mandibular body anteriorly. A Plastic Surgery Facial Traumatic consultation was noted.

· On July 30, 2019, at the request of Triple D, Shrum appeared at Fast Pace where personnel noted a workers' compensation injury involving a telephone pole to the face around 1300, on July 29, 2019. Shrum did not indicate he had fallen off a horse.

· The injury was reported to Triple D on July 30, 2019, and it prepared a First Report of Injury on that date and forwarded it to the Department of Workers' Claims.

· The two notes of PriMedical, presumably providing case management services to Triple D's insurance carrier, reflect a swinging telephone pole hit Shrum's head causing lost consciousness - broke jaw - ORIF right mandibular fracture with MMF on July 31, 2019. A report prepared by Tina Hyde reflects Shrum sustained a work-related injury and reported a pole hit him in the head at such a rate he could not get out of the way. There is no history in either of these documents indicating Shrum fell off a horse.

· The records of UK Plastic Surgery dated August 6, 2019, reveal the following: Chief Complaint – The patient presents to the office today with/for s/p ORIF right parasymphyseal mandibular fracture with MMF on 7/31/19. The History of present Illness – Mr. Shrum is a 25 yo male presenting to clinic today s/p ORIF right parasymphyseal mandibular fracture with MMF on 7/31/19. Patient reports doing well. He states he [had] pain

-8-

in his jaws and teeth. Reports he has been drinking ensure, Gatorade, smoothies, etc. Denies fever, chills, or n/v. Patient states his bite feels "off", feels like it is set off to the left and back a little. The records dated June 17, 2020, reveal the following: History of Present Illness – Patient is a 26 yo male who presents for follow-up of ORIF of mandible fracture. Patient states that he intermittently has pain in the right side of his mandible. He also reports having a left mandibular first molar that has recently caused him problems. He reports his occlusion is different than his pre-morbid occlusion. Active Problems – Mild cognitive impairment (G31.84), Post-traumatic headache (G44.309). Past Medical History – History of work related injury.

· The records from UK Neuroscience Institute reflect personnel saw Shrum for evaluation of a traumatic brain injury because he sustained a traumatic injury in July 2019 when his head was hit with a pole resulting in a fractured jaw. There is no mention of Shrum falling off a horse. Mild cognitive impairment was assessed.

· Dr. Leung's report reveals he received a history that Shrum sustained a work-related injury on July 29, 2019, when he was hit by a telephone pole in the right jaw.

· Dr. Barrett's report reflects that while at work a telephone pole swung into Shrum hitting him in the face.

· Dr. Auton's report reveals Shrum suffered a work-related injury on July 29, 2019, when he was hit by a telephone pole on the right side of the face. Notably, Shrum was referred to Dr. Auton by Tina Hyde with PriMedical.

· After Shrum was discharged from UKMC, all medical providers subsequently treating Shrum, including UK Neuroscience Institute, UK Plastic Surgery, Dr. Leung, Dr. Barrett, and Dr. Anton did not recount a history nor offer an opinion that Shrum had sustained a work-related injury as a result of falling off a horse. Dr. Leung initially diagnosed cognitive impairment post-concussion syndrome. Dr. Barrett diagnosed retrograde amnesia following a concussive event and completely discounted Shrum's story of falling off a horse. Similarly, UK Neuroscience Institute and UK Plastic Surgery assessed a cognitive impairment. Dr. Anton did not provide a diagnosis. Rather, she determined the results of the cognitive testing were judged to be an accurate reflection of his **current** level of functioning. ([E]mphasis added[.])

While at LCRH and UKMC [hospitals], between either 4:16 or 5:28 p.m. on July 29, 2019, and 4:00 a.m. on July 30, 2019, after being hit in the head with a swinging telephone pole, Shrum provided multiple histories referencing being thrown or knocked off a horse.

At LCRH Shrum offered the following histories:

· Shrum first stated he was thrown off a horse.

· He also stated four hours earlier (July 29, 2019) he was thrown off his horse into a telephone pole and onto the ground. He struck his head, and this was witnessed by a friend helping him.

· Two of LCRH's diagnostic reports reflect he stated he fell or was thrown from a horse, one of which added he hit a tree.

UKMC recorded the following histories:

-10-

· He stated he was training a horse and was bucked off and his face hit a pole.

· He was "bucked off horse hit telepole."

· He was breaking a horse and bucked off and hit a pole face first. He was riding a horse at high speed, turned a corner and struck a telephone pole knocking him off the horse.

· He was riding his horse yesterday afternoon (July 29, 2019) when the horse took a sharp turn around a telephone pole that led him to being thrown off.

Since the above-cited testimony indicates the purported fall off a horse occurred on July 29, 2019, this begs the question - at what point did Shrum ride and fall off a horse on July 29, 2019? The records of Triple D establish Shrum was at work from 7:00 a.m. to 4:30 p.m. Before 7:00 a.m., he was traveling with Johnson to work. His co-workers stated he was hit by a swinging telephone pole and returned to the Campbellsville shop. Shrum testified he was taken to the hospital by Johnson immediately after being hit by the telephone pole. Shrum simply did not have the opportunity before or after getting hit in the head by a swinging two-ton telephone pole to ride a horse. There is no testimony he rode the horse at or any time before lunch. Importantly, Shrum identified more than once being hit by a telephone pole or a pole in the multiple histories provided to LCRH and UKMC [hospitals].

The ALJ stated the parties agree Shrum suffered an injury on July 29, 2019, but disagreed as to whether the injury occurred at work. However, the statements of Johnson, Rowe, and Ross as well as Triple D's Incident Report and First Report of Injury establish Shrum was hit in the jaw by a swinging telephone pole. In fact, all of Triple D's records, including all eyewitness statements,

-11-

firmly demonstrate Shrum was injured at work on July 29, 2019. Notably, Johnson was the individual who lost control of the telephone pole which swung and hit Shrum in the face. Despite the overwhelming evidence in the record supporting the fact Shrum was hit in the face by a telephone pole, the ALJ made a finding that the varying histories Shrum provided to LCRH and UKMC [hospitals] are more reliable and persuasive. . . . Further, the medical opinions offered by Drs. Leung and Barrett establish that after he was hit in the face by a swinging telephone pole, he suffered cognitive impairment. This was corroborated by two UKMC medical departments subsequently treating Shrum after his release from UKMC on July 30, 2019.

Not surprisingly, the inconsistent histories Shrum provided to LCRH and UKMC [hospitals] indicate he did not have a clear understanding of how he was injured on July 29 2019. . . .

. . . .

Notably, after previously testifying at his deposition that he was immediately transferred to UKMC, Shrum testified at the hearing that he was sent home because his insurance did not provide coverage. Shortly thereafter at the hearing, Shrum again testified that he was transferred to UKMC. Shrum's recollection of the events do not negate the fact that all of the witnesses who were present in the afternoon of July 29, 2019, in Loretto said Shrum was hit in the jaw by a swinging telephone pole. Shrum's testimony and Triple D's records give rise to the question, what happened after Shrum was struck by a swinging telephone pole? Specifically, did Shrum leave work immediately after the injury or did he return to Campbellsville at 4:30 p.m. and then go to the hospital? In any event, the answer to this question does not rebut the medical and lay evidence reflecting Shrum was hit in the head by a swinging thirty-foot long telephone pole.

-12-

Given the eyewitness statements, Shrum's injuries, and the unrebutted diagnoses of Dr. Barrett, Dr. Leung, UK Plastic Surgery Department, and UK Neuroscience Department, Shrum's inability to initially provide a cogent and a consistent account of how he was injured is not surprising. We find no evidence in the record corroborates Shrum's statements to his initial medical providers that he was injured when he was either on a horse or thrown from a horse on July 29, 2019.

Further, if as the ALJ found, Triple D's timesheet is unreliable, then Shrum could have conceivably appeared at LCRH at 4:16 p.m. The ALJ stated the witnesses described the injury very differently from how Shrum described it, as they noted he was dazed but denied medical treatment. The ALJ found significant Shrum's testimony that he lost consciousness and woke up to Johnson performing CPR on him because he did not have a pulse. The ALJ also found significant that none of the witnesses reported performing first aid on Shrum or taking him for medical treatment. She also referenced the timesheets indicating Shrum, Johnson, and Rowe worked until 4:30 p.m., and Shrum's intake sheet at LCRH noted an arrival of 4:21 p.m. Further, she noted if Johnson drove Shrum to the hospital as Shrum contended, then they could not have worked until 4:30 p.m. This presupposes the handwritten notation at 4:21 p.m. on the intake sheet is accurate, especially in light of the next page of the records which reveals Shrum was seen by a physician over an hour later.

The ALJ also failed to recognize the intake sheet of LCRH establishing an arrival of 4:21 p.m. supports Shrum's statement that Johnson drove Shrum to the hospital immediately after the accident occurring at 2:42 p.m. or 2:47 p.m. In any situation, Shrum had to have ridden with Johnson after leaving work from Loretto or Campbellsville. Thus, either Shrum worked until 4:30 p.m. and then went to the hospital or he was taken by

-13-

Johnson straight to the hospital. However, none of the above findings and conclusions address or rebut the fact that all eyewitnesses and Triple D's Employee Injury Form state Shrum was hit in the head by a swinging telephone pole. By all accounts, Shrum did not fall into the telephone pole, the telephone pole swung into him. Notably, the ALJ did not state she rejected the portion of the witnesses' statements indicating Shrum was hit in the head by a swinging telephone pole. Rather the ALJ addressed the inconsistency of Shrum's testimony and the portions of witnesses' statements as to what occurred after Shrum was hit in the head by the swinging telephone pole that did not coincide with Shrum's accounts of what occurred post-injury. The ALJ did not address the fact that Shrum, Johnson, and Rowe agree Shrum was hit by a swinging telephone pole. Although the ALJ may have found other portions of the witnesses' statements and Triple D's timesheet unreliable and inconsistent with other accounts of what occurred after the telephone pole hit Shrum, the witnesses' statements unanimously establish Shrum was hit in the face with a telephone pole on July 29, 2019.

. . . .

Moreover, aside from multiple inconsistent histories provided by Shrum within two to twelve hours after being struck in the head by a swinging thirty-foot two-ton telephone pole, there is no other evidence Shrum was riding a horse on the date in question. Further, Shrum's testimony that he has not been on a horse since he was seventeen years old is not contradicted by the record. In contrast, Triple D's business records, the statements of Triple D's employees, the case manager's reports, and Dr. Auton's report establish Shrum sustained a work-related injury. So too do the records of Fast Face, UK Plastic Surgery and Neuroscience Departments.

-14-

April 20, 2022, Workers' Compensation Board Opinion at 38-44, 46-48, and 53 (footnotes omitted).

Considering the evidence as a whole, we agree that evidence, primarily generated by Triple D, establishes that Shrum suffered a work-related injury to his face and head after being accidentally hit by a telephone pole while working for Triple D. Thus, we agree with the Board that this matter must be remanded to the ALJ for further proceedings.[1]

In sum, we do not believe the Board erred in its application of the law or in its assessment of the evidence as to cause gross injustice. *See W. Baptist Hospital*, 827 S.W.2d at 687-88.

For the foregoing reasons, we affirm the Opinion of the Workers' Compensation Board.

ALL CONCUR.

BRIEF FOR APPELLANT:

Allison M. Helsinger
Mason H. Proffitt
Lexington, Kentucky

BRIEF FOR APPELLEE ANTHONY SHRUM:

John W. Spies
Louisville, Kentucky

---

[1] We deem any remaining contentions of error to be moot or without merit.